UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHANCE T. KELHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:12-cv-316 |
| | ) |
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on the Motion *in Limine* [DE 65] filed by the defendant, CSX Transportation, Inc., on June 26, 2015. For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART**.

*Background*

This case arose from a locomotive accident that occurred on January 6, 2012. The plaintiff, Chance Kelham, has alleged that he suffered injuries as a result of the accident. He has claimed that he was stepping down three stairs into the main portion of the locomotive cab when the locomotive unexpectedly moved forward, which caused him to fall down the stairs. A second train collided with the rear of Kelham's train and caused the jolt. The defendant, CSX Transportation, Inc., has stipulated that it was negligent, and Kelham won a partial motion for summary judgment on comparative negligence. Therefore, the remaining issues for trial are causation and damages.

*Discussion*

First, CSXT has requested the court to prohibit Kelham, his attorneys, and any witnesses from stating that Kelham was or will be ineligible for workers' compensation benefits or that the

Federal Employee's Liability Act is his sole source of compensation in the presence of the jury. Kelham has indicated that he has no objection to this request. Furthermore, the Seventh Circuit has held that juries should not be instructed that a plaintiff in an FELA case was ineligible for workers' compensation payments because it could prejudice the railroad. *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006); *see Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987); *Weinell v. McKeesport Connecting R. Co.*, 411 F.2d 510, 512 (3d Cir. 1969). Therefore, this request is **GRANTED**. Kelham, his attorneys, and any witnesses are prohibited from indicating that he is ineligible for workers' compensation benefits or that the FELA is his sole source of compensation in the presence of the jury.

Second, CSXT has requested the court to prohibit Kelham or his attorneys from explaining the history, purpose, or intent of the FELA to the jury. Kelham has indicated that he has no objection to this request. Additionally, courts have held that the jury is instructed about the applicable law, so there is no reason for it to hear arguments about Congress' intent to enact the law. *See, e.g.*, *Stillman*, 811 F.2d at 838 ("Our review of the record indicates that the district court adequately instructed the jury on the FELA and its applicability to this case. So long as the jury was properly instructed on the applicable law, we can see no reason why it would be either necessary or appropriate for the jury to hear an argument about Congress's intent in enacting the law."); *Taylor v. Union Pac. R.R. Co.*, 2010 WL 5343295, at *2 (S.D. Ill. Dec. 21, 2010). Therefore, this request is **GRANTED**. Kelham and his attorneys are prohibited from explaining the history, purpose, or intent of the FELA to the jury.

Third, CSXT has requested the court to prohibit Kelham from telling the jury about the parties' settlement negotiations, including CSXT's settlement offers. Kelham has indicated that he has no objection to this request. Additionally, Rule 408 prohibits the use of compromise

offers and negotiations "to prove or disprove the validity or amount of a dispute claim or to impeach by a prior inconsistent statement or a contradiction . . . ." **FEDERAL RULES OF EVIDENCE 408**.  Therefore, this request is **GRANTED**.  The parties are prohibited from telling the jury about their settlement negotiations or offers, unless it falls within the exception under **Rule 408(b)**.

Fourth, CSXT has requested the court to prohibit Kelham from making a "Golden Rule" appeal to the jury.  "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (quoting *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd*, 465 U.S. 752, 104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984) (citation omitted); *see United States v. Roman*, 492 F.3d 803, 805–06 (7th Cir. 2007).  Kelham has indicated that he has no objection to this request.  Therefore, this request is **GRANTED**.  Kelham is prohibited from making a "Golden Rule" appeal to the jury.

Fifth, CSXT has requested the court to prohibit Kelham from referencing its objections to his discovery requests.  CSXT has indicated that its discovery objections are irrelevant to the trial and that any reference to those objections to the jury would be prejudicial to it.  Kelham has indicated that he has no objection to this request.  Therefore, this request is **GRANTED**.  Kelham is prohibited from referencing CSXT's discovery objections to the jury.

Sixth, CSXT has requested the court to prohibit Kelham from referencing CSXT's relative worth or financial resources.  "Courts have held that appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of

the plaintiffs is improper and may be cause for reversal." *Adams Labs., Inc. v. Jacobs Eng'g Co., Inc.*, 761 F.2d 1218, 1226 (7th Cir. 1985). Kelham has indicated that he has no objection to this request. Therefore, this request is **GRANTED**. Kelham is prohibited from referencing CSXT's relative wealth or financial resources to the jury.

Seventh, CSXT has requested the court to prohibit Kelham from presenting evidence about his gross wage loss. It has indicated that FELA claimants are limited to damages that "flow from the deprivation of the pecuniary benefits which [he] might have reasonably received if [he] had not [been injured]." *Mi. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 70, 33 S. Ct. 192, 57 L. Ed. 417 (1913). Additionally, pecuniary loss is calculated with the claimant's "after-tax income, rather than his gross income before taxes . . . ." *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493, 100 S. Ct. 755, 62 L. Ed. 2d 689 (1980).

Kelham conceded that his economic losses were net losses and indicated that he will ask the jury to return a verdict awarding the net lost wages and benefits. However, he commented that his economic expert must testify about his gross earnings, past and present, explain how gross wages were reduced to net numbers, and explain and apply the procedure to reduce his future losses to present value to calculate his net losses. Therefore, he claimed it was necessary and appropriate for his economic expert to begin by testifying about Kelham's gross wages and then end with testimony about his net losses. *See Blue v. W. Ry. of Ala.*, 469 F.2d 487, 496 (5th Cir. 1972) (holding that the district court erred by excluding evidence of Blue's gross earnings history in a FELA case). Although any damages are limited to Kelham's net losses, his expert may testify about Kelham's gross wages to explain how his net wages and future losses are calculated. Therefore, this request is **DENIED**.

Eighth, CSXT has requested the court to prohibit Kelham from suggesting that it was disrespectful of a body that was struck and killed by another CSXT train. In his deposition, Kelham testified that a CSXT train had struck and killed a man but that CSXT was more concerned with moving the freight than taking care of the body. CSXT has claimed that the above testimony is irrelevant to this case and that it would only prejudice CSXT if presented to the jury. Kelham has indicated that he has no objection to this request. Therefore, this request is **GRANTED**. Kelham is prohibited from suggesting that CSXT was disrespectful to a body that was struck and killed by a CSXT train.

Ninth, CSXT has requested the court to prohibit Kelham from testifying that his father is on disability retirement from CSXT. During his deposition, Kelham testified that his father was a Yardmaster at CSXT until his disability retirement in 2009. CSXT has indicated that it has no objection to testimony that Kelham's father was a Yardmaster at CSXT or that he is now retired. However, it has argued that testimony about his disability retirement would invite prejudicial speculation that his disability was caused by his work at the railroad. Additionally, it has claimed that this issue is not relevant to any issues that the jury must decide.

Kelham indicated that his father retired as a Yardmaster after the Railroad Retirement Board found him occupationally disabled due to a one-level spinal fusion. The RRB provides benefits for occupational disability even if the disability was not work-related. Therefore, a railroad employee that became disabled during an off-duty recreational activity would qualify for disability benefits from the RRB. Kelham has argued that testimony about his father is relevant to CSXT's argument that he failed to mitigate his damages. CSXT will argue that Kelham failed to mitigate his damages by failing to apply for a Yardmaster position. However, Kelham will testify that he knew he could not endure the physical burdens of a Yardmaster with his three-

level spinal fusion because his father, who had a one-level spinal fusion, could not continue working as a Yardmaster because of his spinal condition.

Testimony about Kelham's father's disability is not relevant to this case. Kelham was familiar with the physical requirements of the Yardmaster position either through his work experience or his father. Therefore, he may testify that he could not endure the physical burdens of the Yardmaster position because of his injury based on his personal knowledge. Kelham can rebut CSXT's failure to mitigate damages argument without discussing his father's disability. Therefore, this request is **GRANTED**.

Tenth, CSXT has requested the court to prohibit Terry Cordray, a vocational rehabilitation counselor, from testifying about the extent of Kelham's injuries or the cause of his injuries. It has argued that Cordray has no formal medical training or experience and is not qualified to testify as an expert witness. Rather, CSXT has indicated that Cordray's role was to help Kelham find suitable employment given his alleged physical limitations.

Kelham has indicated that Cordray is an expert on his impaired employability. Therefore, Cordray will testify how Kelham's earning capacity has been reduced because of the injuries he sustained in the train accident. Specifically, Cordray will testify that Kelham aggravated his spondylolisthesis when he fell as a result of the train collision, that the injury required a three-level spinal fusion, and that Kelham's medical condition will prevent him from working as a locomotive engineer. To reach those opinions, Cordray relied on Kelham's medical records, which documented his back injury from the accident, detailed his continuing disabilities, and concluded that he could not work as a locomotive engineer.

"Rule 703 *generally* permits experts to state the underlying basis of their opinions (if the information is of the type reasonably relied upon by experts), but that the underlying information

still is subject to exclusion under the balancing test of Rule 403." *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990) (citing *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1270–71 (7th Cir. 1988)). Therefore, Cordray, a vocational expert who relied on Kelham's medical records to formulate his opinions, may discuss the medical records unless they fail the Rule 403 balancing test. CSXT has not argued that the probative value of the medical records was outweighed by the danger of unfair prejudice under Rule 403. However, Kelham has indicated that his treating physicians will testify about his spinal injury, permanent disabilities, and inability to work as a locomotive engineer. Thus, the jury will hear testimony about Kelham's medical records even if Cordray could not discuss them.

Because CSXT has not argued that the medical records are unduly prejudicial under Rule 403 and Kelham's treating physicians will testify about his injury, disabilities, and work limitations, Cordray may testify about Kelham's medical records, which form the basis of his opinion. Cordray may not provide any medical opinions but he may explain how Kelham's medical records support his vocational findings. Therefore, this request is **DENIED**.

Based on the foregoing reasons, the Motion *in Limine* [DE 65] is **GRANTED IN PART and DENIED IN PART**.

ENTERED this 20th day of July, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge