UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHANCE T. KELHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:12-cv-316 |
| | ) |
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Reconsideration of the Order Denying His Motion *In Limine* No. 1 [DE 87] filed by the plaintiff, Chance T. Kelham, on August 28, 2015. For the following reasons, the motion is **DENIED**.

*Background*

This case arose from a locomotive accident that occurred on January 6, 2012. The plaintiff, Chance Kelham, has alleged that he suffered injuries as a result of the accident. He has claimed that he was stepping down three stairs into the main portion of the locomotive cab when the locomotive unexpectedly moved forward, which caused him to fall down the stairs. A second train collided with the rear of Kelham's train and caused the jolt. The defendant, CSX Transportation, Inc., has stipulated that it was negligent, and Kelham won a partial motion for summary judgment on comparative negligence. Therefore, the remaining issues for trial are causation and damages. On July 27, 2015, this court denied Kelham's first motion *in limine*, which requested the court to bar any evidence, argument, interrogation, or reference to any back symptoms or treatment he received before the accident. Kelham has requested reconsideration because new evidence became available after his motion *in limine* was due.

*Discussion*

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." **Hope v. United States**, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994); *see* **Talano v. Northwestern Med. Faculty Found., Inc.**, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." **Ahmed v. Ashcroft**, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted); *see* **Seng-Tiong Ho v. Taflove**, 648 F.3d 489, 505 (7th Cir. 2011) (explaining that a court can amend its judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence) (citing **Obriecht v. Raemisch**, 517 F.3d 489, 494 (7th Cir. 2008); **United States v. Ligas**, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it."). In **Frietsch v. Refco, Inc.**, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

56 F.3d at 828; *see* **Oto v. Metro. Life Ins. Co.**, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); **Divane v. Krull Electric Co.**, 194 F.3d 845, 850 (7th Cir. 1999); **LB Credit Corp. v. Resolution Trust Corp.**, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality

and conservation of scarce judicial resources." *Global View Ltd. Venture Capital v. Great Central Basin Exploration*, 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003) (internal quotation omitted).

Kelham has presented new evidence that was not available on June 26, 2015, when his Motion *in Limine* was due. Specifically, he has presented deposition testimony from Drs. Robert Shugart, Jeffrey Nickel, and David Bojrab. Dr. Shugart, an orthopedic surgeon, treated Kelham in 2009. After an October 2009 MRI, Dr. Shugart found that Kelham had a herniated disc at the L4-L5 level and spondylolisthesis at the L5-S1 level. Kelham complained about radicular and leg pain to Dr. Shugart. Dr. Shugart concluded that the herniated disc, not the spondylolisthesis, caused Kelham's symptoms.

Dr. Shugart stated that eighty-five percent of herniated discs resolve on their own with conservative treatment. He also stated that he treated Kelham's herniated disc with conservative treatment successfully in 2009. Dr. Shugart indicated that Kelham did not return for treatment after November 9, 2009 and that he did not expect Kelham to need surgery for his herniated disk. Dr. Shugart testified that someone with spondylolisthesis might not suffer any symptoms from spondylolisthesis during a typical lifetime.

Dr. Nickel examined Kelham after the accident. Kelham reported low back and neck pain to Dr. Nickel. Dr. Nickel concluded that Kelham did not have any symptoms of a herniated disc. Dr. Bojrab treated Kelham after the accident. Dr. Bojrab's former partner, Dr. Hatch, treated Kelham for back pain before the accident. Dr. Hatch last treated Kelham for back pain on November 15, 2010 and last prescribed pain mediation on April 18, 2011. Kelham did not seek treatment for back pain again in 2011. After the accident, Kelham underwent an MRI on January 17, 2012. Dr. Bojrab found that the MRI showed no evidence of a symptomatic

herniated disc at the L4-L5 level. Dr. Bojrab did find spondylolisthesis at L5-S1 and treated Kelham for symptoms from his spondylolisthesis.

Based on the above testimony, Kelham has argued that the court should exclude any evidence about his spinal injuries before the accident. He has claimed that the expert medical testimony demonstrated that his herniated disc was treated successfully in 2009, that his herniated disc did not cause his symptoms after the accident, and that his spondylolisthesis was asymptomatic before the accident. Therefore, he has argued that the accident did not aggravate a pre-existing injury but activated his asymptomatic spondylolisthesis. Based on that argument, Kelham has claimed that any evidence about his herniated disc would be irrelevant because the accident did not affect that injury.

Kelham has presented non-binding authority to argue that this court should exclude evidence about his herniated disc. However, the authority did not address whether evidence of pre-accident symptoms should have been excluded. Rather, the authority discussed whether the trial court instructed the jury properly. *See* **McLaughlin v. BNSF Ry. Co.**, 300 P.3d 925, 935–38 (Colo. App. 2012) (finding whether the trial court erred by giving both eggshell and aggravation instructions); **Waits v. United Fire & Cas. Co.**, 572 N.W.2d 565, 575–78 (Iowa 1997) (holding that the trial court did not err by giving both eggshell and aggravation instructions). Additionally, the authority dealt with plaintiffs who had asymptomatic pre-existing conditions without contest. *See* **Bennett v. Messick**, 457 P.2d 609, 612 (Wash. 1969) (indicating that the earlier injury occurred forty years before the accident and that it healed normally); **Tuite v. Stop & Shop Cos., Inc.**, 696 A.2d 363, 367 (Conn. App. Ct. 1997) (finding the plaintiff's injury asymptomatic because she was surprised she had arthritis because her shoulder had not caused any problems).

Although CSX did not identify its evidence specifically, it has indicated that its evidence would counter Kelham's assertion that his injuries were asymptomatic at the time of the accident. In its response to Kelham's initial motion *in limine*, CSX stated that it had at least seven medical witnesses who would explain Kelham's pre-existing condition. Additionally, it has claimed that Dr. Canavati operated to fix Kelham's herniated disc after the accident and that Kelham reported the same pain before and after the accident. CSX would present evidence of Kelham's prior back injuries to show that the accident aggravated his prior conditions as opposed to activating an asymptomatic injury.

In his initial motion *in limine*, Kelham argued that he had an eggshell spine and that he suffered an indivisible injury that could not be apportioned between his preexisting and post-accident injuries. This court found a sufficient causal connection for the jury to apportion any damages based on the supporting medical records and the record as a whole. Based on the new medical testimony, Kelham has argued that his conditions were asymptomatic rather than indivisible. However, each argument has focused on CSX's lack of expert medical testimony to apportion Kelham's damages.

Considering that Kelham's authority did not demonstrate that evidence of preexisting conditions should have been excluded, this court will allow CSX to present evidence about Kelham's pre-accident conditions to support its aggravation defense. As this court stated on July 27, 2015, Kelham's medical records demonstrated a history of back pain preceding the accident. Additionally, he received treatment for back pain throughout 2009 and 2010 and reported chronic back pain in August 2011. Although Kelham has presented evidence that his conditions were asymptomatic at the time of the accident, CSX has claimed that its evidence would show an opposite conclusion. The jury should decide this factual dispute.

5

Kelham also has cited a Montana state trial court order to argue that this court relied on *Sauer* incorrectly in the July 27, 2015 order. *See* ***Spotted Horse v. BNSF Ry.***, 2013 WL 8178353 (Mont. Dist. 2013). In *Sauer*, the Tenth Circuit held that a jury could apportion between a preexisting condition and a post-accident injury without expert testimony that apportioned the injury precisely. ***Sauer v. Burlington N. R.R. Co.***, 106 F.3d 1490, 1494 (10th Cir. 1997). Kelham has argued that *Sauer*'s holding was limited to whether an expert must apportion the percentage of damages between the preexisting condition and the post-accident injury exactly. He has claimed that CSX must provide sufficient expert evidence to allow the jury to apportion his damages on a non-arbitrary, logical, or rational basis. Because CSX does not have expert medical testimony on apportionment, Kelham has argued that CSX could not provide a non-arbitrary, logical, or rational basis for apportionment. Therefore, he has argued that evidence of his pre-accident injuries would cause the jury to apportion his damages speculatively. Moreover, he has argued that the evidence was irrelevant and prejudicial because it would not assist the jury but would cause the jury to speculate.

Although CSX does not have expert medical testimony, the court disagrees that evidence of Kelham's pre-accident injuries would cause the jury to apportion his damages speculatively. The jury could infer a connection between the preexisting conditions and the post-accident injuries based on the record as a whole, including Kelham's medical records. As stated above, Kelham has a history of back conditions and back pain preceding the accident. The jury could apportion Kelham's damages logically and reasonably based on the medical records.

The court also finds that the evidence should not be excluded under Rule 403. As stated above, the evidence would not cause the jury to speculate. Additionally, the evidence would not

6

confuse or mislead the jury. Moreover, the evidence is probative on issues of causation and damages. Therefore, the motion to reconsider the July 27, 2015 order is **DENIED**.

Kelham has requested the court to give the jury Washington State's eggshell instruction. The court will determine whether an eggshell instruction is appropriate based on the evidence presented at trial. However, Kelham may include a proposed eggshell instruction when the parties submit their proposed jury instructions on January 22, 2016. The court will draft an instruction at that time if necessary. This request is **DENIED**.

Based on the foregoing reasons, the Motion for Reconsideration of the Order Denying His Motion *In Limine* No. 1 [DE 87] is **DENIED**.

ENTERED this 2nd day of November, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge